# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| **DON THOMASON** 621 Wilson Street Rising Sun, Indiana 47040 | : : : : | Case No. 1:17-cv-526  Judge _____ |
| Plaintiff, | : : | |
| vs. | : : | |
| **CINCINNATI CHRISTIAN UNIVERSITY** C/O Taft Service Solutions Corp. 425 Walnut Street, Suite 1800 Cincinnati, OH 45202 | : : : : : | **PLAINTIFF'S COMPLAINT WITH JURY DEMAND ENDORSED HEREON** |
| Defendant. | : : | |

## PARTIES

1. Plaintiff Don Thomason is a resident of Rising Sun, Indiana, and a citizen of the State of Indiana.

2. Defendant Cincinnati Christian University ("CCU") is an accredited private university in Cincinnati, Ohio.

## JURISDICTION AND VENUE

3. This Court has original jurisdiction to hear this case pursuant to 28 U.S.C. §1332 because the parties are completely diverse and the amount in controversy exceeds $75,000.

4. This Court has jurisdiction to hear this case pursuant to 28 U.S.C. § 1331 because Counts I, III, V, VII and VIII arise under the laws of the United States, including the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*; the Americans with Disabilities Act ("ADAAA"), 42 U.S.C. § 12111, as amended; Title VII of the Civil Rights Act, as amended ("Title VII"), 42 U.S.C. §§ 2000 et seq.; and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*

5. This Court has supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367 on the grounds that Plaintiff's state law claims are so related to his federal claims over which the Court has original jurisdiction that they form a part of the same case or controversy.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Plaintiff was employed by Defendant in this Division and District and a substantial amount of the conduct giving rise to Plaintiff's claims occurred within this Division and District.

7. Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). He filed that charge on January 19, 2016, less than 180 days after being notified of his termination on October 23, 2015.

8. The EEOC did not rule that his charge was untimely.

9. Plaintiff received a Notice of Right to Sue from the EEOC dated July 28, 2017.

10. Plaintiff filed this Complaint within 90 days of his receipt of the EEOC Notice of Right to Sue letter.

11. Plaintiff has met all procedural prerequisites for his claims.

## FACTUAL ALLEGATIONS

12. Plaintiff, male, was born in 1958 and suffers from a real and/or perceived disability.

13. Plaintiff began working for Defendant on August 4, 1993, and held the position of University Registrar.

14. Plaintiff performed his job well and consistently received positive performance evaluations.

15. In January 2013, Plaintiff's youngest daughter, Alicia, was diagnosed with liver cancer. Her physicians believed that her only hope for survival was to have a liver transplant.

16. In April 2013, a liver became available for Alicia. Plaintiff took a week of approved leave while his daughter was in the hospital. Tragically, the cancer had spread beyond her liver and the transplant was never performed.

17. Tom Thatcher, Chief Academic Officer at CCU, informed Plaintiff that he could set his own schedule so that he could spend more time with Alicia. Plaintiff continued to work more than forty hours a week because he was teaching a class and preparing for graduation.

18. From May to December 2013, Plaintiff took intermittent leave to attend weekly appointments with Alicia.

19. Alicia passed away on January 15, 2014.

20. Plaintiff returned to work full-time on January 27, 2014.

21. Prior to Alicia's diagnosis, Plaintiff was advised he needed a left knee replacement. He postponed that surgery following her diagnosis to assist with her care. During the course of Alicia's illness, Plaintiff's right knee deteriorated to the point where a total right knee replacement was required as well.

22. Plaintiff's first knee surgery was scheduled for February 2014, with the second to follow in October.

23. Defendant agreed to 12 weeks of FMLA-approved leave for Plaintiff to recover from the first surgery.

24. Plaintiff returned to work after only six weeks so that he could organize commencement ceremonies for Defendant.

25. In Plaintiff's performance evaluation on June 24, 2014, Defendant criticized Plaintiff for his attendance and claimed his performance and engagement suffered because of his approved medical leave.

26. In August 2014, Defendant terminated one of the Assistant Registrars, despite the fact that the Registrar's Office was in the midst of developing a new advising software module.

27. Plaintiff realized that there was no way for the Registrar's Office to complete the advising module project before his upcoming second knee replacement, so he postponed the surgery until November 2014.

28. In October 2014, Plaintiff's assistant, Amanda Derico, received a 38% increase in pay and a promotion.

29. Along with overtime, the effect of Ms. Derico's promotion was that she was compensated at a higher level than Plaintiff.

30. Ms. Derico's promotion occurred only a few weeks before Plaintiff was scheduled for 12 weeks of leave for his second knee replacement surgery.

31. Ms. Derico is twenty years younger than Plaintiff and less than 40 years old.

32. In spite of difficult personal circumstances, Plaintiff oversaw the successful and timely implementation of the new advising module.

33. On August 28, 2015, CCU President, Ken Tracey, announced that the incoming freshman class was up 35% from the prior year, and that CCU planned to build a new dormitory. CCU was also in the process of hiring new professors and staff members.

34. On October 23, 2015, Plaintiff was informed that Defendant was eliminating 26 positions, and that he would be included in this reduction-in-force.

35. Defendant abruptly terminated Plaintiff October 23, 2015, despite his recent accomplishments.

36. During the termination meeting, Plaintiff asked David Ray, Dean of the Seminary, and Mr. Thatcher about his selection for termination. Plaintiff asked how CCU could operate without a Registrar.

37. Mr. Thatcher admitted that Plaintiff's position was not being eliminated; instead, Ms. Derico and Judy Pratt would assume his responsibilities.

38. When Plaintiff questioned why he was being terminated rather than Ms. Derico, who was paid more but was less experienced, Mr. Thatcher stated that Ms. Derico would have "more longevity in the position than you would have."

39. After Mr. Thatcher left the meeting, Mr. Ray said, "I know it is tough to get another position at our age. Employers are often looking for younger employees. Age is not supposed to matter, but it does."

## COUNT I

### (Age Discrimination - ADEA)

40. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

41. Plaintiff was over the age of 40 at the time of his termination.

42. Plaintiff was fully qualified for his position at all relevant times.

43. Defendant intentionally discriminated against Plaintiff by, including but not limited to, treating him less favorably than similarly situated, significantly younger employees, giving him a negative performance evaluation, constructively demoting him, and terminating his employment in violation of the ADEA.

44. Defendant's actions were intentional and/or in reckless indifference to Plaintiff's federally protected right to be free from such discrimination.

45. As a direct and proximate result of Defendant's unlawful discriminatory conduct, Plaintiff has been injured and is entitled to judgment and compensation pursuant to the ADEA.

## COUNT II

### (Age Discrimination - R.C. Chapter 4112)

46. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

47. Plaintiff was fully qualified for his position at all relevant times.

48. Plaintiff was over the age of 40 at the time of his termination.

49. Defendant intentionally discriminated against Plaintiff by, including but not limited to, treating him less favorably than similarly situated, significantly younger employees, giving him a negative performance evaluation, constructively demoting him, and terminating his employment in violation the Ohio Revised Code Chapter 4112.

50. Defendant's conduct was wilful, intentional, wanton, malicious, and in conscious disregard of Plaintiff's rights.

51. As a direct and proximate result of Defendant's unlawful discriminatory conduct, Plaintiff has been injured and is entitled to judgment and compensation pursuant to R.C. Chapter 4112.

## COUNT III

### (Disability Discrimination - ADAAA)

52. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

53. Plaintiff is a qualified individual with a real and/or perceived disability as defined in the Americans with Disabilities Act of 1990, as amended.

54. Defendant intentionally discriminated against Plaintiff on the basis of his disability by, including but not limited to, treating him unfavorably after the onset of his disability, giving him a negative performance evaluation, constructively demoting him, and terminating his employment in violation of the ADAAA.

55. Plaintiff was terminated on account of his real and/or perceived disability.

56. Defendant's actions were intentional and/or in reckless indifference to Plaintiff's federally protected right to be free from such discrimination.

57. As a direct and proximate result of Defendant's unlawful discriminatory conduct, Plaintiff has been injured and is entitled to judgment and compensation pursuant to the ADAAA.

## COUNT IV

### (Disability Discrimination - R.C. Chapter 4112)

58. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

59. Plaintiff is a qualified individual with a real and/or perceived disability as defined under R.C. Chapter 4112.

60. Defendant intentionally discriminated against Plaintiff by, including but not limited to, treating him unfavorably after the onset of his disability, giving him a negative performance evaluation, constructively demoting him, and terminating his employment in violation of R.C. Chapter 4112.

61. Plaintiff was terminated on account of his real and/or perceived disability.

62. Defendant's conduct was wilful, intentional, wanton, malicious, and in conscious disregard of Plaintiff's rights.

63. As a direct and proximate result of Defendant's unlawful discriminatory conduct, Plaintiff has been injured and is entitled to judgment and compensation pursuant to R.C. Chapter 4112.

## COUNT V

### (Gender Discrimination - Title VII)

64. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

65. Plaintiff was fully qualified for his position at all relevant times.

66. Defendant intentionally discriminated against Plaintiff by, including but not limited to, treating him less favorably than similarly situated female employees, giving him a

negative performance evaluation, constructively demoting him, and terminating his employment in violation of Title VII.

67. Defendant's actions were intentional and/or in reckless indifference to Plaintiff's federally protected right to be free from such discrimination.

68. As a direct and proximate result of Defendant's unlawful discriminatory conduct, Plaintiff has been injured and is entitled to judgment and compensation pursuant to Title VII.

## COUNT VI

### (Gender Discrimination - R.C. Chapter 4112)

69. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

70. Plaintiff was fully qualified for his position at all relevant times.

71. Defendant intentionally discriminated against Plaintiff by, including but not limited to, treating him less favorably than similarly situated, female employees, giving him a negative performance evaluation, constructively demoting him, and terminating his employment in violation the Ohio Revised Code Chapter 4112.

72. Defendant's conduct was wilful, intentional, wanton, malicious, and in conscious disregard of Plaintiff's rights.

73. As a direct and proximate result of Defendant's unlawful discriminatory conduct, Plaintiff has been injured and is entitled to judgment and compensation pursuant to R.C. Chapter 4112.

## COUNT VII

### (Retaliation - FMLA)

74. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

75. Plaintiff was an "eligible employee" as defined by 29 U.S.C. § 2611 because Defendant employed him for at least 12 months, he worked at least 1,250 hours in the previous 12-month period, and Defendant employed 50 or more employees.

76. Plaintiff was entitled to leave to care for his daughter, as well as for his own serious health condition, pursuant to 29 C.F.R. § 825.112 and 29 U.S.C. § 2611.

77. Defendant retaliated against Plaintiff for exercising his rights under the FMLA by giving him a negative performance evaluation, constructively demoting him, and terminating his employment.

78. Defendant's actions constitute willful violations of the FMLA.

79. As a result, Plaintiff has suffered damages and is entitled to relief.

## COUNT VIII

### (Interference - FMLA)

80. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

81. Plaintiff was an "eligible employee" as defined by 29 U.S.C. § 2611 because Defendant employed him for at least 12 months, he worked at least 1,250 hours in the previous 12-month period, and Defendant employed 50 or more employees.

82. Plaintiff was entitled to leave to care for his daughter, as well as for his own serious health condition, pursuant to 29 C.F.R. § 825.112 and 29 U.S.C. § 2611.

83. Defendant interfered with Plaintiff's right to exercise FMLA leave by giving him a negative performance evaluation, constructively demoting him, and terminating his employment.

84. Defendant's actions constitute willful violations of the FMLA.

85. As a result, Plaintiff has suffered damages and is entitled to relief.

**WHEREFORE**, Plaintiff Don Thomason prays for the following relief:

    A.    That Defendant be enjoined from further unlawful conduct as described in the Complaint;

    B.    That Plaintiff be reinstated in his employment;

    C.    That Plaintiff be awarded all lost pay and benefits up until the time of trial;

D. That Plaintiff be awarded all lost pay and benefits from the time of trial until a reasonable time in the future;

E. That Plaintiff be awarded other compensatory damages;

F. That Plaintiff be awarded liquidated damages;

G. That Plaintiff be awarded punitive damages;

H. That Plaintiff be compensated for the adverse tax consequences of receiving a lump sum award rather than his compensation over several, separate tax years;

I. That Plaintiff be awarded pre-judgment and post-judgment interest;

J. That Plaintiff be awarded reasonable attorneys' fees and costs; and

K. That Plaintiff be awarded all other legal and equitable relief to which he may be entitled.

Respectfully submitted,

*/s/ Kelly Mulloy Myers*
Kelly Mulloy Myers (0065698)
Randolph H. Freking (0009158)
Trial Attorneys for Plaintiff
FREKING MYERS & REUL LLC
600 Vine Street, 9th Floor
Cincinnati, OH 45202
(513) 721-1975/Fax: (513) 651-2570
*kmyers@fmr.law*
*randy@fmr.law*

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

*/s/ Kelly Mulloy Myers*